No. 15-12031-CC

In the

# United States Court of Appeals for the Eleventh Circuit

---

JOHN D. KING,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:14-CV-1171-ORL-23EAJ

---

## BRIEF OF THE UNITED STATES

---

A. LEE BENTLEY, III
United States Attorney

MICHELLE THRESHER TAYLOR
Assistant United States Attorney
Appellate Division

LINDA JULIN MCNAMARA
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 714887
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

August 4, 2016

*King v. United States of America*
No. 15-12031-CC

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons and entities identified in the certificate of interested persons and corporate disclosure statement in John D. King's principal brief, the following persons have an interest in the outcome of this case:

1. Bentley, A. Lee, III, United States Attorney;

2. Bole, Bradley, former Assistant United States Attorney;

3. Daisley, Robert, Esq.;

4. Harden, Charles T., Assistant United States Attorney;

5. McNamara, Linda Julin, Assistant United States Attorney, Deputy Chief, Appellate Division;

6. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

7. Sadaka, Thomas A., Esq.; and

8. Thresher Taylor, Michelle, Assistant United States Attorney.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument. In denying John D. King's motion to proceed on appeal *in forma pauperis*, the district court found that this appeal is "frivolous and not taken in good faith." *See* Doc. 37. The United States' arguments below support that finding, and oral argument will not be necessary to assist this Court in the decisional process.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement..........C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................... ii

Table of Citations ............................................................................................. iii

Statement of Jurisdiction ................................................................................. vi

Statement of the Issue....................................................................................... 1

Statement of the Case ....................................................................................... 1

    *Course of Proceedings* ................................................................................. 1

    *Statement of the Facts*................................................................................. 5

    *Standard of Review* ..................................................................................... 5

Summary of the Argument ............................................................................... 6

Argument and Citations of Authority ............................................................. 7

    The district court properly dismissed King's complaint because
    sovereign immunity barred his False Claims Act claim ......................... 7

Conclusion...................................................................................................... 18

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................... 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................... 8, 9

*Bledsoe v. Cmty Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ............................................................. 14–16

*Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*,
    927 F.2d 1198 (11th Cir. 1991) .................................................................. 8

*Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*,
    92 F.3d 1200 (11th Cir. 2012) ................................................................... 5

*Evanto v. Fed. Nat'l Mortg. Ass'n,*
    814 F.3d 1295 (11th Cir. 2016) .................................................................. 5

*Fed. Deposit Ins. Corp. v. Meyer*,
    510 U.S. 471, 114 S. Ct. 996 (1994) ...................................................... vi, 9

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375, 114 S. Ct. 1673 (1994) ....................................................... 10

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49, 98 S. Ct. 1670 (1978) ........................................................... 13

*Shaw v. United States*,
    213 F.3d 545 (10th Cir. 2000) .............................................................10, 12

*United States ex rel LaCorte v. Wagner*,
    185 F.3d 188 (4th Cir. 1999) ..............................................................15, 16

*United States ex rel. Adrian v. Regents of the Univ. of Cal.*,
    337 F. App'x 379 (5th Cir. 2009) .............................................................. 14

*United States ex rel. Babalola v. Sharma*,
  746 F.3d 157 (5th Cir.), *cert. denied*, 134 S. Ct. 2856 (2014) ........................ 12

*United States ex rel. Godfrey v. KBR, Inc.*,
  360 F. App'x 407 (4th Cir. 2010) .............................................................. 15

*United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*,
  495 F.3d 103 (3rd Cir. 2007) .................................................................... 14

*\*United States ex rel. Newell v. City of St. Paul*,
  728 F.3d 791 (8th Cir. 2013) ............................................................... 14, 15

*United States ex rel. Springfield Terminal Ry. v. Quinn*,
  14 F.3d 645 (D.C. Cir. 1994) .................................................................... 15

*\*United States v. King*,
  395 U.S. 1, 89 S. Ct. 1501 (1969) ............................................................. 10

*\*United States v. Mitchell*,
  445 U.S. 535, 100 S. Ct. 1349 (1980) .................................................... vi, 9

*United States v. Nordic Village, Inc.*,
  503 U.S. 30, 112 S. Ct. 1011 (1992) ......................................................... 10

*United States v. Park Place Assoc.*,
  563 F.3d 907 (9th Cir. 2009) .................................................................... 10

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765, 120 S. Ct. 1858 (2000) ......................................................... 1

## Statutes

28 U.S.C. § 1291 ........................................................................................ vi

31 U.S.C. § 3729 ........................................................................................ 10

31 U.S.C. § 3730 .................................................................................... 2, 10

31 U.S.C. § 3730(a) ................................................................................... 10

iv

31 U.S.C. § 3730(b) ................................................................... 1, 10

31 U.S.C. § 3730(c)(5) ..........................................................3, 11, 15

31 U.S.C. § 3730(d)(1) ............................................................. 1, 11

31 U.S.C. § 3730(d)(2) ............................................................. 1, 11

31 U.S.C. § 3730(h) ...............................................................10, 11

31 U.S.C. § 3731 ...................................................................... 10

31 U.S.C. § 3732 ...............................................................10, 11

31 U.S.C. § 3732(b) ..................................................................... 11

31 U.S.C. § 3839(d)(2) .............................................................. 13

**Rules**

Fed. R. App. P. 4(a) ..................................................................vi

Fed. R. Civ. P. 12(b)(6) .............................................................. 4

Fed. R. Civ. P. 37(b)(2) .............................................................. 3

## Statement of Jurisdiction

This is an appeal from a final decision of the United States District Court for the Middle District of Florida in a civil case dismissing John D. King's complaint with prejudice. That court lacked jurisdiction because, as discussed in detail in the argument below, the United States has not waived sovereign immunity for the claims he asserts here, and sovereign immunity is jurisdictional in nature. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980). The district court entered its order on April 2, 2015, Doc. 27, and King timely filed a notice of appeal on May 5, 2015, Doc. 28. *See* Fed. R. App. P. 4(a). This Court has jurisdiction to determine whether the district court properly dismissed King's complaint for a lack of jurisdiction. *See* 28 U.S.C. § 1291.

## Statement of the Issue

Did the district court properly dismiss King's complaint because sovereign immunity barred his False Claims Act claim?

## Statement of the Case

After John D. King's False Claims Act ("FCA") suit against government contractors was dismissed because of his egregious discovery violations, King sued the United States claiming that he had been wrongfully denied a share of the United States' recovery obtained in a settlement with government contractors who had provided faulty parts for hand-grenades and projectile assemblies. The district court dismissed King's complaint because, among other reasons, the United States has not waived sovereign immunity for this type of suit. He challenges that dismissal in this appeal.

### *Course of Proceedings*

King was the relator in a 2008 qui tam lawsuit against the manufacturers of hand-grenade and projectile-assembly components.[1] *See* Doc. 13 at 1. He

---

[1] In a qui tam action, a private person, called a "relator," initiates a fraud suit on behalf of the United States and is entitled to a portion of any damages that the United States recovers as a result of the fraud. *See* 31 U.S.C. § 3730(b); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 768, 120 S. Ct. 1858, 1860 (2000). The portion of proceeds that the relator may receive depends on whether the United States decides to intervene. *See* 31 U.S.C. § 3730(d)(1) and (2).

1

filed the suit under the "FCA," 31 U.S.C. § 3730, and alleged that the defendants had supplied components of those products that did not conform to contract requirements and that they had fraudulently concealed the nonconformance through falsified test reports. *See* Doc. 13 at 5–7 and Ex. 1. The United States declined to intervene in the case. *See* Doc. 13 at 3.

While King's qui tam suit was pending, the government's contracting officer investigated the defendants' possible non-conformance with contract requirements. *See* Doc. 13 at 7 and Ex. 2. On July 17, 2012, the contracting officer, Julie A. Seaba, issued a declaration, stating that the government had "concluded that the majority of the detents[2] were non-conforming, but the degree of non-conformance did not pose an increased risk to the safety of the warfighter." *See* Doc. 13, Ex. 2. She said that, consequently, the United States Army had invoked the "warranty clause" under its contract with JKS Industries, which was one of the contractors implicated in the qui tam suit, and had agreed to a settlement in the amount of the costs that the United States had incurred in its investigation. *See id.*

The declaration was filed in King's qui tam action on July 20, 2012, *see id.,* but King never amended his qui tam suit to assert an alternate-remedy

---

[2]A detent is a small part of the device used to detonate a grenade.

claim under 31 U.S.C. § 3730(c)(5) or otherwise assert a claim to a portion of the settlement proceeds.[3] He also failed to comply with numerous discovery obligations and destroyed evidence. *See* Doc. 18, Ex. 2. The defendants in the qui tam action, therefore, moved for the termination of that suit as a sanction under Fed. R. Civ. P. 37(b)(2), and, agreeing with the magistrate judge's detailed report and recommendation, *see* Doc. 18, Ex. 2, the district court granted that motion and dismissed King's qui tam suit with prejudice on February 29, 2013, *see* Doc. 18, Ex. 1; *see also* Doc. 13 at 3.

In January 2014, this Court summarily affirmed, ruling "[King] has presented no colorable argument that the district court erred in dismissing his amended complaint as a sanction for [his] '… persistent pattern of willful and bad faith litigation misconduct, his unwillingness to comply with the civil rules and order of this Court, and a flagrant disregard for the discovery process

---

[3]The alternate-remedy clause provides, in part,

[T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5).

throughout the litigation.'" *See* January 15, 2014, order in Appeal No. 13-11026-CC (quoting district court's order; alteration in original).

In October 2014, King sued the United States for allegedly failing to comply with the FCA's alternate remedy clause by depriving him of his right to money that the United States had recovered in its settlement with JKS Industries. Doc. 13. The United States moved to dismiss King's complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting that the United States is immune from suit absent its consent and that the United States has not waived its sovereign immunity with respect to claims for money damages under the FCA. Doc. 18 at 6–9. The United States argued alternatively that, because King's qui tam suit had been dismissed, no valid FCA action remained pending, which is a prerequisite to the sharing of an alternate remedy. Doc. 18 at 9–12. And the United States argued that King's complaint and its attachments showed that the United States had not settled any FCA or fraud-related claim under the FCA's "alternate remedy" clause but instead had merely recovered the costs of its investigation. Doc. 18 at 12–15.

Granting the United States' motion to dismiss, the district court ruled that King's action was barred by sovereign immunity and that the other reasons set forth in the United States' motion also supported dismissal of the complaint. *See* Doc. 25 at 3–4. The court explained that "[a] waiver of the

4

Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied," and that the FCA contains no express waiver of sovereign immunity. Doc. 25 at 2–3. The court gave King until April 1, 2015, to amend his complaint, saying that, if he failed to do so by then, the court would dismiss the action with prejudice. Doc. 25 at 3–4. Because King did not amend the complaint, the district court dismissed the complaint with prejudice on April 2, 2015. Doc. 27.

This appeal followed. Doc. 28. King moved to proceed on appeal *in forma pauperis*, Doc. 30, but the district court denied his motion, concluding that this appeal "is frivolous and not taken in good faith." Doc. 37.

## Statement of the Facts

All of the facts that are pertinent to this appeal are set forth above.

## Standard of Review

This Court reviews de novo the dismissal of a complaint for failure to state a claim, accepting as true all plausible factual allegations in the complaint. *Evanto v. Fed. Nat'l Mortg. Ass'n,* 814 F.3d 1295, 1297 (11th Cir. 2016). This Court also reviews de novo the district court's dismissal of a complaint based on a claim of sovereign immunity. *See Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1203 (11th Cir. 2012).

5

## Summary of the Argument

The district court properly dismissed King's complaint because it failed to state any plausible claim for relief. King sought relief from the United States supposedly based on the FCA, but the United States has not waived sovereign immunity for this type of suit. A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. Because King's complaint failed to allege any plausible claim that the United States has waived sovereign immunity for claims under the FCA, King failed to establish that the district court had jurisdiction. Consequently, the district court properly dismissed his complaint.

In any event, although King contends that he was entitled to share in the United States' recovery of funds in a settlement with government contractors under the FCA's alternate-remedy provision, a valid qui tam action under the FCA is a prerequisite to sharing in an alternate remedy. Because the district court had earlier dismissed King's qui tam action with prejudice, King lost any potential right to recover any settlement proceeds in connection with that suit, and he could not revive his dismissed FCA suit by bringing a new suit against the United States. For this reason also, the district court properly dismissed King's complaint.

And finally, King's complaint failed to allege that the United States had

6

actually recovered any damages based on the same fraud claims that he had raised in his qui tam action. His complaint showed that the United States had determined that no actionable fraud had occurred, had not recovered damages for fraud from any government contractor, and had recovered only the cost of its investigation. In this circumstance, the FCA's alternate-remedy provision would have provided no basis for King to share in the United States' recovery, even if the United States had waived its sovereign immunity and King's qui tam suit had not been dismissed with prejudice.

## Argument and Citations of Authority

### The district court properly dismissed King's complaint because sovereign immunity barred his False Claims Act claim.

Addressing most of his brief to his contention that his qui tam action asserted a valid claim that government contractors had fraudulently sold the government defective parts for hand grenades and projectile assemblies, and speculating that the United States recovered more than $7.5 million from those contractors in an out-of-court settlement for their fraud on the government, King contends that, as the original qui tam relator, he was entitled to a share of that recovery under the FCA's alternate-remedy clause.[4] *See* King's brief at 15–

---

[4]He also claims that counsel for the United States in the earlier dismissed qui tam case had a conflict of interest in representing the United States with

31. He challenges the district court's determination that sovereign immunity barred his suit against the United States, contending that sovereign immunity is inconsistent with the need for government accountability and in conflict with the Fifth and Fourteenth Amendments' guarantees of due process. *See* King's brief at 45. Binding precedent of this Court and the Supreme Court, however, establishes that the district court correctly dismissed King's complaint as barred by sovereign immunity.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974

---

respect to his qui tam claim. *See* King's brief at 31–34. AUSA Harden did not have any conflict of interest, but any supposed violation of the Rules Regulating the Florida Bar regarding would have no bearing on whether the district court properly dismissed the second lawsuit based on sovereign immunity anyway. *See* Preamble to Chapter 4 of the Rules Regulating the Florida Bar ("Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.").

King also mentions in passing the Federal Tort Claims Act, *see* King's brief at 48, but his complaint was not premised on that Act, and his brief does not develop any argument about it. Therefore, he has waived any argument based on that Act. *See Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are deemed waived).

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (factual allegations "must be enough to raise a right to relief above the speculative level"). It calls for enough facts to "raise a reasonable expectation that discovery will reveal evidence of" a defendant's liability. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

King's complaint did not meet this standard because it failed to raise any claim for which the United States has waived its sovereign immunity and consequently could be liable. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued …, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769–70 (1941)); *accord Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994) ("Sovereign immunity is jurisdictional in nature."). Any waiver of sovereign immunity "cannot be implied but must be unequivocally

9

expressed." *United States v. King*, 395 U.S. 1, 4, 89 S. Ct. 1501, 1503 (1969);

*accord United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S. Ct. 1011,

1014 (1992). The burden of establishing federal jurisdiction rests with the party

asserting jurisdiction—King, in this case. *See Kokkonen v. Guardian Life Ins. Co.*

*of America,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *United States v. Park*

*Place Assoc.*, 563 F.3d 907, 924 (9th Cir. 2009) (party suing United States has

burden of showing unequivocal waiver of sovereign immunity).

The FCA, which supposedly provided the jurisdictional basis for King's

suit in this case, *see* Doc. 13 at 3, contains no express waiver of sovereign

immunity, *see* 31 U.S.C. § 3730; *Shaw v. United States*, 213 F.3d 545, 548 (10th

Cir. 2000). It merely creates a cause of action on behalf of the United States

against entities or persons who submit fraudulent claims for payment or

approval to the United States. *See* 31 U.S.C. §§ 3729–3732. King specifically

said that the court had jurisdiction under 31 U.S.C. § 3732, *see* Doc. 13 at 3,

but that section concerns "actions under section 3730," which, in turn,

addresses (1) civil actions by the United States against any person who violates

the FCA; (2) civil actions by relators on the United States' behalf for FCA

violations; and (3) civil actions by employees against their employers if they

suffer retaliation for pursuing FCA violations. *See* 31 U.S.C. § 3730(a), (b), and

10

(h).[5] It does not address civil actions for damages against the United States, much less expressly waive the United States' sovereign immunity for such actions.

Section 3730 allows relators in an FCA action to obtain a share of the proceeds obtained from the defendants who committed fraud on the United States. *See* 31 U.S.C. § 3730(d)(1) and (2). But the FCA does not create a private right of action for a litigant whose FCA action was dismissed to then sue the United States directly for money damages. Section 3730(c)(5)'s alternate-remedy provision, on which King also relies in his complaint and brief, does not authorize a civil action against any party, much less against the United States. It provides that,

> Notwithstanding subsection (b), [which is the provision that allows a private person to file a qui tam suit,] the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5). This means that, even if a private person has filed a qui

---

[5]Section 3732 also addresses civil actions brought under state law for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under the FCA. *See* 31 U.S.C. § 3732(b). That provision does not apply here.

tam suit, the Government may elect to pursue an alternate remedy to that suit, *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 161 (5th Cir.), *cert. denied*, 134 S. Ct. 2856 (2014), and that, if the United States does so based on the same fraud claims that the relator raised in his pending qui tam action, the relator will be entitled to recover the same amount from the alternate remedy as it would have from the qui tam action, *Id.* at 162–63. The alternate-remedy provision, though, says nothing about a relator's ability to sue the United States under the FCA for money that the relator claims is due under the alternate-remedy provision.

In *Shaw*, 213 F.3d at 548, the Tenth Circuit affirmed a district court order granting a motion to quash a qui tam relator's writ of garnishment against a federal agency, where the writ sought recovery of a judgment for attorney's fees, litigation expenses, and costs awarded after the successful prosecution of a qui tam action. Just as King claims in this case that, by including the alternate-remedy clause in the FCA, Congress must have intended to waive the United States' sovereign immunity from suit when the United States wrongfully denies a relator recovery, the relator in *Shaw* claimed that the language of the FCA showed that Congress intended to waive sovereign immunity for FCA-based collection procedures for judgments awarding fees and expenses. The relator in that case based his argument on the

12

fact that 31 U.S.C. § 3839(d)(2) provides that, if the government does not intervene in an FCA suit, the relator is entitled to a portion of the judgment and "reasonable expenses[,] attorneys' fees and costs." *Id.* The Tenth Circuit rejected that argument, noting that "[n]o legal proceeding, including garnishment, may be brought against the United States absent a waiver of sovereign immunity," and that any waiver of sovereign immunity "must be express in the statutory text." *Id.* (internal quotation marks and citation omitted). The court ruled that the FCA provisions awarding fees and expenses against a defendant did not constitute an express waiver of sovereign immunity permitting the relator to sue a federal agency to recover those costs and expenses. *Id.*

Likewise, in this case, the provision of the FCA that permits a relator to participate in any recovery that the United States collects after pursuing an alternate remedy to a qui tam suit does not constitute an express waiver of sovereign immunity permitting the relator to sue the United States. And a waiver of sovereign immunity cannot be implied from the various constitutional provisions that King cites in his brief because "[i]t is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed*." Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677 (1978) (internal quotation marks and citation omitted). The district court,

13

therefore, correctly granted the United States' motion to dismiss.

Moreover, King's complaint also was subject to dismissal because King would not have been entitled to any recovery under the alternate-remedy provision even if the United States had waived its immunity from suit in this context. As the United States established in the attachments to its motion to dismiss, before King had filed his complaint in this case, the district court had dismissed King's qui tam action with prejudice as a result of his egregious failures to comply with his discovery obligations. *See* Doc. 18, Exs. 1, 2. It is well-settled that a valid FCA action is a pre-requisite to sharing in an alternate remedy. *Bledsoe v. Cmty Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("[a]bsent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government"); *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3rd Cir. 2007) (rejecting relator's claim for share of alternate remedy where relator's FCA action was dismissed on summary judgment); *United States ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 799 (8th Cir. 2013) (rejecting relator's claim for share of alternate remedy where complaint jurisdictionally barred); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 337 F. App'x 379, 381 (5th Cir. 2009) ("under the FCA a relator may only share in the proceeds of an alternate

14

remedy if he or she has a valid complaint"); *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010) ("[B]ecause the [relator's] claims have failed, he has no right to participate in any recovery by the government"). That is because, under the alternate-remedy provision, a relator's share is limited to whatever remedy he may have had if his qui tam action had continued as an FCA proceeding. *See* 31 U.S.C. § 3730(c)(5); *Newell*, 728 F.3d at 799. Therefore, if a relator is not entitled to a recovery under the FCA because his action has failed, he is not entitled to recover under the FCA's alternate-remedy provision.

This rule makes sense because, if a relator is not able to recover in a qui tam action, there is no reason to provide him a share of any other government recovery. *See Bledsoe*, 501 F.3d at 522. Requiring a relator to have a valid, pending qui tam action to take advantage of an alternate remedy obtained by the United States is both fair and consistent with congressional policy. As numerous courts have observed, "[t]he history of the FCA qui tam provisions demonstrates repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994); *see also United States ex rel LaCorte v. Wagner*, 185 F.3d 188, 191–92 (4th Cir. 1999).

15

Therefore, if King had properly pursued his qui tam action and the United States had sought and obtained an alternate remedy for the same claims that King had raised, he might have been entitled to a share in the United States' recovery. But, because his qui tam complaint was dismissed with prejudice as a result of his own discovery abuse, he lost his opportunity to share in any recovery obtained from the FCA defendants, and he could not revive his dismissed FCA suit by simply bringing a new suit against the United States—if he could, the district court's dismissal sanction would be virtually meaningless.

And finally, the district court properly dismissed King's complaint because it failed to allege that the United States had actually obtained a recovery for any contractor's fraud based on an alternative remedy to his qui tam claims. A settlement pursued by the United States constitutes an alternate remedy under the FCA only if, in lieu of intervening in a qui tam action, the United States settles the same fraud claims that the relator original raised. *Bledsoe,* 343 F.3d at 649; *LaCorte,* 185 F.3d at 192 ("To the extent these [settled] claims are unrelated to [relators'] earlier action, they have no rights because they are not bona fide relators with respect to those claims.").

Here, King failed to allege in his complaint that, in lieu of intervening in his qui tam case, the United States had settled the same fraud claims that he

16

had raised. According to King's complaint and Seaba's affidavit that was attached to it, the United States had not obtained damages for any alleged contractor fraud or false claims but instead had recovered only the cost of its investigation under a contractual warranty clause. *See* Doc. 13 at 5 and Ex. 2. King's complaint thus showed that any recovery from a contractor had not been the result of false statements or fraud on the United States, much less the result of the fraud that King had alleged in his qui tam suit.

Therefore, the district court had numerous reasons to dismiss King's complaint, and he is not entitled to relief in this appeal.

17

## Conclusion

For these reasons, the United States requests that this Court affirm the district court's order dismissing King's complaint with prejudice.

Respectfully submitted,

A. Lee Bentley, III
United States Attorney

Michelle Thresher Taylor
Assistant United States Attorney
Appellate Division

By:     *s/ Linda Julin McNamara*
Linda Julin McNamara
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 714887
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
linda.mcnamara@usdoj.gov

18

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by United States mail on August 4, 2016, to:

JOHN D. KING
4066 Rose Petal Lane
Orlando, FL 32808

*Plaintiff-appellant, pro se*

*s/ Linda Julin McNamara*
LINDA JULIN MCNAMARA
Assistant United States Attorney

gkpr/no/08/04/16

b_King, John brief fnl.docx